IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

THOMAS HOWES,                              *

    Plaintiff,                         *

       v.                             *   Case No.: DKC-20-924

RAYMOND JAMES & ASSOCIATES,      *
INC., *et al.*,
                              *

    Defendants.
                              *

*   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM OPINION**

Plaintiff Thomas Howes, *pro se*, filed a Petition to Vacate and Remand Arbitration Award in the Circuit Court for Montgomery County Maryland, and it was removed to this court on April 8, 2020 by Defendants Raymond James & Associates, Inc. and IFS Securities. (ECF No. 1).  Subsequently, IFS Securities, Inc. filed a Suggestion of Bankruptcy (ECF No. 15), and the case was stayed as to it. (ECF Nos. 17, 19). The court also has denied Mr. Howes' motion to remand the case back to state court. (*Id.*).[1]  Raymond James opposes Mr. Howes' petition.  (ECF No. 3).  The court has reviewed the parties' briefs and now rules pursuant to Local Rule 105.6, no hearing being

---

[1] The prior rulings were issued by the Honorable Paul W. Grimm, who presided over this case until his retirement at the end of 2022.  This case was transferred to the undersigned after Judge Grimm's retirement.

deemed necessary. For the reasons that follow, the court denies Plaintiff's Petition.

## I.   Background[2]

Thomas Howes alleges that he was a brokerage client of Defendants and that they unlawfully disclosed his confidential personal and financial information. (ECF Nos. 4, at 6; 5, at 1-3).  In April 2019, Mr. Howes filed an arbitration suit at the Financial Industry Regulatory Authority ("FINRA") naming the following parties: Raymond James, IFS Securities, Alexys Ulando McKenzie, Joquinn Thomas Sadler, and Janet Bentley-Ewers (collectively, the "Respondents"). (*Id.*, ECF No. 5, at 1). He filed an amended claim on July 7, 2019, clarifying that his claim was against Raymond James and Associates, Inc. and not against Raymond James Financial Services, Inc.  (ECF No. 4-1, at 2-3).  Mr. Howes asserted five causes of action against the Respondents, including breach of contract, breach of fiduciary duty, fiduciary negligence, a violation of FINRA customer information, and invasion of privacy, and he sought $500,000 in compensatory and

---

[2] The background facts relayed here are as provided in Mr. Howes' petition (ECF No. 4), Raymond James' response (ECF No. 3), and the accompanying exhibits, including the supplemented statement of claim (ECF Nos. 5, 5-1) and the arbitration award (ECF No. 4-1).  *Pro se* filings, "however unskillfully pleaded, must be liberally construed." *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

punitive damages.  (ECF No. 5, at 2-7).  Answers were filed on June 28, 2019, and amended answers were filed on July 25, 2019. (ECF No. 4-1, at 2-3).

On August 23, 2019, Raymond James filed a Motion to Dismiss Mr. Howes' Statement of Claim, asserting that Mr. Howes was not a client since Raymond James was merely the clearing agent for IFS Securities.  (ECF Nos. 3, at 3; 3-4).  The FINRA arbitration panel held a prehearing conference on the record on October 14, 2019, heard oral arguments, and denied the motion.  (ECF No. 3-5, at 2-3; ECF 4-1, at 4).  Raymond James then filed a Motion for a More Definitive Statement.  (ECF No. 3, at 3; *see* ECF No. 3-6).  The FINRA arbitration panel considered the pleadings and granted the motion, setting a deadline of December 16, 2019 for Mr. Howes to supplement his claim.  (ECF No. 3-6).  Mr. Howes filed his supplemented claim on December 1, 2019.  (ECF Nos. 3, at 4; 5-1).

On December 6, 2019, Mr. Howes sent the arbitration panel chairperson an email asking her to recuse herself as chairperson. (ECF Nos. 4, at 4; 4-4). He alleged that the panel was "ignoring the FINRA rules and treating th[e] arbitration like the wild west." (ECF No. 4-4 at 2). According to Mr. Howes, the chairperson did not notify FINRA about his email. (ECF No. 4, at 5).  On December 10, 2019, Mr. Howes filed a motion for the removal of the chairperson.  (ECF No. 3-8).  Mr. Howes asserted that the chairperson was not following FINRA rules or guidelines, which

created a bias against him.  (*Id.* at 1).  He described examples of the chairperson's disregard for the rules, including allowing untimely answers from the Respondents and allowing Raymond James "a free shot to have the case dismissed."  (*Id.* at 2-3).  On December 30, 2019, FINRA's Director of the Office of Dispute Resolution denied Mr. Howes' request to remove the panel chairperson. (ECF No. 3-9).  On February 11, 2020, the chairperson issued an order that addressed Mr. Howes' February 8, 2020 recusal motion.[3]  (ECF No. 4-5, at 3-4).  The chairperson denied the motion, finding no conflict of interest or lack of impartiality.  (*Id.*).

The Respondents timely filed their answers to Mr. Howes' supplemented complaint on December 16, 2019.  (ECF No. 4-1, at 4). In its answer, Raymond James again requested that it be dismissed from the case because it was not associated with Mr. Howes' account, and all Respondents filed a Joint Motion to Dismiss later that day.  (*Id.*; ECF Nos. 3, at 4; 3-10).  Mr. Howes immediately filed his opposition to the motion on the same day.  (ECF 4-1, at 4).  On December 21, 2019, Mr. Howes filed a motion to strike the joint motion to dismiss, which he followed on December 23, 2019 with a motion to file a second amended statement of claim, and on December 24, 2019 with a motion to change the hearing date for the

---

[3] Mr. Howes alleges that this motion refers to his December 6, 2019 email.  (ECF No. 4, at 5).

joint motion to dismiss. (*Id.*). Respondents filed their reply, and they also opposed Mr. Howes' motion to strike their joint motion to dismiss. (*Id.*).

On December 24, 2019, the panel issued an order denying both Mr. Howes' motion to strike and motion to change the hearing date and ruled that Mr. Howes could reply to the Respondents' opposition at the pre-hearing conference that was scheduled for January 2, 2020. (*Id.*). Mr. Howes filed his reply to the motion to strike on December 26, 2019, and on January 2, 2020, Respondents filed their opposition to Mr. Howes' motion to amend. (*Id.*).

The arbitration panel conducted a pre-hearing conference on the record on January 2, 2020 and heard oral arguments on the Respondents' joint motion to dismiss. (*Id.* at 5). On February 12, 2020, the panel granted the Respondents' joint motion to dismiss and denied Mr. Howes' motion to file a second amended statement of claim. (*Id.* at 5, 8). Mr. Howes' claims were dismissed with prejudice. (*Id.* at 5). The panel determined that Mr. Howes had misused the FINRA forum to engage in a dispute with an old adversary that did not involve the Respondents. (*Id.*).

On February 24, 2020, Mr. Howes filed his petition to vacate the arbitration award in the Circuit Court for Montgomery County Maryland, and it was removed to this court on April 8, 2020. (ECF No. 4, at 1). Mr. Howes asserts that the award should be vacated

because the arbitrators violated the Federal Arbitration Act and applicable FINRA dispute resolution rules.   (*Id.*).

## II.   Standard of Review

Review of an arbitrator's award is severely circumscribed; indeed, the scope of review is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitrations at all — i.e., the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.   *See Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998).   If there is a valid contract between the parties providing for arbitration, and if the dispute resolved in the arbitration was within the scope of the arbitration clause, then the substantive review is limited to those grounds set out in § 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a).

Section 10 allows for vacating an award 1) where the award was procured by corruption, fraud, or undue means; 2) where there was evident partiality or misconduct on the part of the arbitrator; or 3) where the arbitrator exceeded his or her powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. *Id.* In addition, a court may overturn a legal interpretation of an arbitrator if it is "in manifest disregard of the law." *Apex Plumbing*, 142 F.3d at 193 ("Federal courts may vacate an arbitration award only upon a

showing of one of the grounds listed in the [FAA], or if the arbitrator acted in manifest disregard of the law."); *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991). Mere misinterpretation of a contract or an error of law does not suffice to overturn an award. *See Upshur*, 933 F.2d at 229.

The burden is on the party challenging an award to prove the existence of one of the grounds for vacating the award. "Because an arbitration award is entitled to a presumption of correctness, the burden upon the challenger is a heavy one." *Owen-Williams v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 907 F.Supp. 134, 137 (D.Md. 1995); *see also Qorvis Commc'ns, LLC v. Wilson*, 549 F.3d 303, 310, 312 (4th Cir. 2008) (noting that the FAA "*mandate[s]* substantial deference to awards").

## III. Analysis

Mr. Howes contends that the arbitration award should be vacated pursuant to section 10 of the FAA, 9 U.S.C. § 10(a). (ECF No. 4, at 1). Mr. Howes argues that the arbitration panel evidenced partiality, was guilty of misconduct, exceeded their powers, and disregarded the law. (ECF No. 4, at 1, 8). The court will address each of these arguments in turn.

### A. Partiality

The Fourth Circuit has considered the following factors to assist the determination of "evident partiality":

> (1) any personal interest, pecuniary or otherwise, the arbitrator has in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of the relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding.

*Consol. Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 130 (4th Cir. 1995) (citation omitted). The mere appearance of bias is insufficient. *Id.* at 129. Any alleged partiality must be "direct, definite, and capable of demonstration rather than remote, uncertain or speculative," and the moving party "must establish specific facts that indicate improper motives on the part of the arbitrator." *Id.* (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993)). Specifically, the moving party must demonstrate "that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." *Id.*

Mr. Howes argues that the chairperson had an obligation to inform FINRA that a motion to recuse had been filed against her, but she did not and acted unethically and with partiality in making rulings against him. (ECF No. 4, at 8). He states that "[i]ts not hard to see the sour grapes by Madam Chairperson[;]" she "acted in bad behavior, ignoring all FINRA rules with the intent to punish the Claimant and ultimately prejudice the Claimant." (*Id.* at 6).

Mr. Howes fails to allege any specific facts that would indicate an improper motive on the part of the chairperson. He also fails to allege any specific facts that would support a finding of unethical behavior or any improper relationship with the opposing parties. Although Mr. Howes complains that the panel misapplied FINRA rules to his detriment, "the interpretation of the FINRA rules is up to the arbitrators to decide, and it is not for the district court 'to determine whether the arbitrator committed an error, even a serious error,' in making those interpretations." *Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Case No. 16-CV-06071-JD, 2018 WL 6138155, at *3 (N.D.Cal. Nov. 23, 2018) (quoting *Sanchez v. Elizondo*, 878 F.3d 1216, 1223 (9th Cir. 2018)); *see also Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 389 (4th Cir. 2000) ("An arbitrator typically retains broad discretion over procedural matters[.]"). Further, Mr. Howes cites no rule that supports his contention that the chairperson had an obligation to inform FINRA about his motion to recuse. Regardless, on December 30, 2019, FINRA's Director of the Office of Dispute Resolution denied Mr. Howes' request to remove the panel chairperson. (ECF No. 3-9).

Mr. Howes fails to carry the heavy burden of demonstrating partiality or bias by the chairperson or the panel.

**B.   Misconduct**

By its terms, § 10(a)(3) allows courts to vacate arbitration awards only "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Importantly, "misconduct" and "misbehavior" implies that "the arbitrators intentionally contradicted the law." *Wachovia Secs., LLC v. Brand*, 671 F.3d 472, 479 (4th Cir. 2012).

Mr. Howes alleges that the arbitrators were guilty of misconduct in allowing a second motion to dismiss after the first motion was denied. (ECF No. 4, at 2, 8). He argues that this was a "violation of FINRA Rule 12504(a)8." (*Id.* at 5; *see also id.* at 4 ("The Chairperson and the panel violated the FINRA Rule 12504(a)8.")). Mr. Howes cites to two subsections of the FINRA rule. (ECF No. 4, at 3-4). "Motions to dismiss a claim prior to the conclusion of a party's case in chief are discouraged in arbitration." (*Id.* at 3 (citing FINRA R. 12504 (a)(1))). "If the panel denies a motion under this rule, the moving party may not re-file the denied motion, unless specifically permitted by panel order." (*Id.* at 4 (citing FINRA R. 12504 (a)(8))).

Here, the arbitration panel did not disregard the FINRA rules because Raymond James did not re-file the denied motion, which had

sought dismissal of Mr. Howes' July 7, 2019 statement of claim. Rather, Raymond James so-called "second motion" was a motion to dismiss Mr. Howes' December 1, 2019 supplemented statement of claim. Although a dismissal motion may be discouraged, it is not prohibited, and special permission was not required under the circumstances here. Further, as discussed above, the interpretation of FINRA rules is up to the arbitrators, not the court.

Mr. Howes has failed to carry the burden of showing misconduct on the part of the arbitration panel.

**C.   Exceeded Powers**

Where a petitioner seeks to vacate an award on the ground that the arbitrators "exceeded their powers," the petitioner must do more than show that the arbitrators seriously erred. *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 671-72 (2010). Instead, "it is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Id.* (citations omitted).  In determining whether a panel has exceeded its powers, the Fourth Circuit has "generally recognized that 'any doubts concerning the scope of arbitrable issues as well as any doubts concerning the scope of the arbitrators' remedial authority, are to be resolved in favor of the arbitrators' authority as a matter of federal law and

policy.'"  *Three S. Del., Inc. v. DataQuick Info. Sys., Inc.*, 492
F.3d 520, 531 (4ᵗʰ Cir. 2007).

Mr. Howes makes only a conclusory allegation that the
arbitrators exceeded their powers.  (ECF No. 4, at 3, 8).  The
only specific arguments made by Mr. Howes relate to the arbitrators
allowing the second motion to dismiss in violation of FINRA Rule
12504(a)(8) and allegations of bias and impartiality on the part
of the chairperson.  Without more, the court cannot find that the
arbitration panel seriously erred, much less exceeded their
powers.

Mr. Howes fails to carry his burden to show that the
arbitration panel exceeded their powers.

### D.   **Manifest Disregard of the Law**

The standard for "manifest disregard" requires more than
"showing that the arbitrators misconstrued the law." *Wachovia*, 671
F.3d at 481. Rather, in order to vacate an arbitration award due
to manifest disregard of the relevant law, the movant must show
that: "(1) the applicable legal principle is clearly defined and
not subject to reasonable debate; and (2) the arbitrator[ ] refused
to heed that legal principle." *Id.* at 483.  "Moreover, . . . the
manifest disregard standard is not an invitation to review the
merits of the underlying arbitration, or to establish that the
arbitrator misconstrued or misinterpreted the applicable law."

*Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015) (citations omitted).

Mr. Howe argues that the "arbitrators disregarded a clearly defined law or legal principle applicable to the case before them," (ECF No. 4, at 8). Liberally construing Mr. Howes' pleadings, the court determines that he is once again referring to FINRA Rule 12504, which he attached to his motion. (*See* ECF Nos. 4, at 3-4; 4-2). As discussed above, the panel did not err in its application of the rule much less refuse to heed the rule.

Mr. Howes has failed to carry his burden to show that the arbitrators manifestly disregarded the law. Additionally, the court notes that it sits to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Wachovia*, 671 F.3d at 478 (citations omitted). Here, Mr. Howes has not shown that the arbitration panel failed to do its job.

## IV. Conclusion

For the foregoing reasons, the court denies Mr. Howes' Petition to Vacate and Remand Arbitration Award as to Raymond James & Associates, Inc.

A separate order will follow.

_____
                /s/
DEBORAH K. CHASANOW
United States District Judge
